[Cite as *In re H.M.*, 2018-Ohio-989.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

IN THE MATTER OF: H.M., E.M.,     :     C.A. CASE NO. 2017-CA-42
    B.M., Jr., L.M. and W.M.     :

    :     T.C. NO. N46373
    :
    :
    :
    :
    :     (Civil Appeal from
    :     Juvenile Court)
    :
    :
. . . . . . . . . . .

# O P I N I O N

Rendered on the 16th day of March, 2018.

. . . . . . . . . . .

NATHANIEL LUKEN, Atty. Reg. No. 87864, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Greene County Children Services

BEN SWIFT, Atty. Reg. No. 65745, P.O. Box 49637, Dayton, Ohio 45449
    Attorney for Mother

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Appellant R.B. (hereinafter referred to as "Mother") appeals a decision of the Greene County Court of Common Pleas, Juvenile Division, terminating her parental rights with respect to her five minor children, H.M., E.M., B.M., L.M., and W.M. (hereinafter

referred to as "the Children"), and awarding permanent custody of all of the Children to Greene County Children Services (hereinafter "GCCS"). Mother filed a timely notice of appeal with this Court on July 14, 2017.[1]

{¶ 2} The record establishes that H.M. was born in June of 2009. E.M. was born in November of 2011. B.M. was born in November of 2012. L.M. was born in December of 2013. W.M. was born in December of 2014. Father and Mother are the biological parents of all five children. At the time GCCS became involved with the family, Mother was the legal custodian and residential parent of the children, and they all lived together with Father at a residence in Fairborn, Ohio.

{¶ 3} Based upon a report that Father had threatened to harm W.M. and then kill himself, GCCS filed a complaint on March 18, 2015, alleging that the children were neglected and dependent. Shortly thereafter on March 24, 2015, GCCS requested and was granted an ex parte order of emergency custody of all of the children, with the sole exception of W.M. who had been taken from Mother and hospitalized for failure to thrive. A shelter care hearing was held on March 25, 2015, and GCCS was awarded interim custody of H.M., E.M., B.M., and L.M. On May 14, 2015, GCCS filed another complaint alleging that W.M. was neglected and dependent. On June 10, 2015, GCCS was awarded interim custody of W.M. after she was released from the hospital.

{¶ 4} At a hearing on October 8, 2015, the parties stipulated that the children were neglected and dependent, and the trial court awarded temporary custody to GCCS in an

---

[1] We note that although Father's parental rights regarding all of the children were also terminated along with Mother's rights, Father did not appeal the trial court's decision. Therefore, on appeal, we need only address the merits of the trial court's decision as it relates to Mother. We further note that on February 22, 2018, Father indicated to this Court that he did not intend to file a response to Mother's appellate brief.

entry issued on October 27, 2015. At an annual hearing held on March 25, 2016, GCCS was granted its first extension of temporary custody of the children. We note that in the early pendency of the case, GCCS created a case plan for Mother and Father whereby they could address the issues leading to the removal of the children from their care. The initial case plan for Mother included the following: 1) sign all releases of information; 2) complete psychological and parenting assessments and follow any recommendations; 3) obtain and maintain secure, safe, and stable housing; 4) complete domestic violence classes through the Domestic Violence Prevention Center; and 5) attend the children's medical and educational appointments.

{¶ 5} On June 21, 2016, GCCS filed a motion for permanent custody of the children. On August 1, 2016, the children's paternal grandparents filed a motion for legal custody. On September 16, 2016, a review hearing was held, and GCCS was awarded a second and final extension of temporary custody.

{¶ 6} On October 16, 2017, and December 27, 2016, hearings were held on GCCS's motion for permanent custody as well as the paternal grandparents' motion for legal custody. On July 3, 2017, the juvenile court issued a decision granting GCCS's motion for permanent custody, thereby terminating the parental rights of Mother and Father. The juvenile court also denied the paternal grandparents' motion for legal custody of the children.[2]

{¶ 7} It is from this decision that Mother now appeals.

{¶ 8} Mother's sole assignment is as follows:

---

[2] We note that the paternal grandparents did not appeal the trial court's decision granting GCCS permanent custody of the children.

{¶ 9} "THE TRIAL COURT'S FINDING THAT THE GRANTING OF PERMANENT CUSTODY OF APPELLANT'S CHILDREN WAS IN THE CHILDREN'S BEST INTEREST WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."

{¶ 10} In her sole assignment, Mother contends that the juvenile court erred when it granted permanent custody of the Children to GCCS. Specifically, Mother argues that GCCS failed to establish by clear and convincing evidence that it was in the best interest of the children to terminate Mother and Father's parental rights and be placed in the permanent custody of GCCS.

**The "12 of 22" Determination**

{¶ 11} Initially, Mother argues that the while the children were in the custody of GCCS for more than twelve months, those twelve months were not within a consecutive twenty-two month period when GCCS filed its motion for permanent custody. Essentially, Mother contends the children could not have been in the custody of GCCS for twelve out of twenty-two consecutive months because a twenty-two month period had not yet elapsed between the onset of the case and filing of the motion for permanent custody.

{¶ 12} The "12 of 22" provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child. *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 22. Through the "12 of 22" provisions in the permanent-custody statutes, the legislature provides parents with 12 months to work toward reunification before an agency can institute a permanent-custody action asserting R.C. 2151.414(B)(1)(d) grounds. *Id.* Consequently, parents must be

afforded every procedural and substantive protection the law allows. *Id*. at ¶ 23. Therefore, *in light of the purpose of R.C. Chapter 2151 and a court's obligation to provide parents with procedural protections in permanent custody proceedings, an agency must afford parents the full 12-month period to work toward reunification before moving for permanent custody on R.C. 2151.414(B)(1)(d) grounds*. *Id*.

{¶ 13} In light of the Court's holding in *In re C.W.*, the GCCS argues that it was not required to wait until twenty-two months had passed before filing its motion for permanent custody as long as the children had been in its custody for at least twelve consecutive months when the motion for permanent custody was filed. *See In re J.R.,* 5th Dist. Stark No. 2016CA00018, 2016-Ohio-2703, ¶ 49. "[A]n agency can file for permanent custody any time after the child has been in the agency's continuous custody for at least twelve months." *In re Vann*, 5th Dist. Stark No. 2005CA00127, 2005-Ohio-4398, ¶ 18, citing *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 23.

{¶ 14} In *In re T.B.*, 9th Dist. Summit No. 21124, 2002-Ohio-5036, ¶ 23, a child was placed in the temporary custody of the agency in March 2000. At a sunset hearing in April 2001, the court granted a six-month extension of temporary custody. The agency filed a motion for permanent custody in September 2001. The mother argued on appeal that R.C. 2151.414(B)(1)(d) requires that the 22-month time period expire before a court could make a finding that a child has been in the custody of a public agency for 12 of the last 22 consecutive months. The appellate court rejected this argument, holding that:

> There is nothing in the plain language of the statute that requires a public
> agency to wait until a child has been in its custody for twenty-two months
> before filing a motion for permanent custody. The statute requires only that

the child must have been in the custody of a public agency for twelve or more months of a consecutive twenty-two month period. This might include a situation where a child had been in temporary custody for six months on one occasion, was briefly out of agency custody, and then returned to temporary custody for another six months -- all within a consecutive twenty-two month period. It may also include a situation where a child has been in the temporary custody of an agency for twelve consecutive months. In either event, once a child has been in temporary custody for at least twelve months out of twenty-two consecutive months, the second prong of the two-part test set forth in R.C. 2151.414(B)(1) is met. In this case, T.B. was in custody for over fifteen consecutive months. Accordingly, Appellant's argument is without merit.

*Id.* at ¶ 23.

{¶ 15} Recently, however, the Sixth District Court of Appeals held that while "[a]n agency may file for permanent custody at any time for another other reason set forth in R.C. 2151.414(B)(1), * * * if the basis for the motion is R.C. 2151.414(B)(1)(d), the statute clearly requires the agency must have had temporary custody of the child for '12 months or more of a consecutive twenty-two-month period.' " *In re K.L.*, 6th Dist. Lucas Nos. L-17-1201, L-17-1210, 2017-Ohio-9003, ¶ 45. The *In re K.L.* court further stated:

The purpose of the "12 of 22 consecutive months" clause is clear when it is read in conjunction with R.C. 2151.413(D), which provides that the agency who has had temporary custody of a child for 12 months of a 22-month consecutive period must file a motion for permanent custody. When such

a motion is filed, the basis for awarding permanent custody is R.C. 2151.414(B)(1)(d). The General Assembly has determined that it is in the best interest of the parties that custody issues be resolved within 24 months. *See* R.C. 2151.353(G) (temporary custody orders terminate after one year); R.C. 2151.415(D)(4) (temporary custody can be extended for no more than two, six-month extensions). If the 22-consecutive months does not mean 22 months of agency involvement, there was no need to set forth that number in the statute. Instead, the statute would have required permanent custody to have been sought after 12 months of temporary custody had expired, regardless of whether temporary custody was intermittent or continuous.

*Id.* at ¶ 48. We note that while the *In re K.L.* court found the trial court erred in finding that R.C. 2151.414(B)(1)(d) could be a basis for awarding permanent custody, other grounds for the award of permanent custody existed pursuant to R.C. 2151.414(B)(1). *Id.* at ¶ 49. Therefore, the trial court was found to not have committed reversible error. *Id.*

{¶ 16} R.C. 2151.414(B)(1)(e) states that, "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." Here, the children were adjudicated neglected and dependent on October 27, 2015, well beyond the sixty days they were removed from the home of Mother and Father. Accordingly, for the purposes of this analysis, the sixty days after removal date applies.

R.C. 2151.414(B)(1)(e).

{¶ 17} In the instant case, the record establishes that GCCS was awarded interim custody of H.M., E.M., B.M., and L.M. on March 25, 2015. Sixty days after that date was May 24, 2015. On April 20, 2015, W.M. was removed from the parents' home for failure to thrive and brought to the hospital. Sixty days after that date was June 19, 2015. On June 21, 2016, GCCS filed a motion for permanent custody of the children. By that time, all of the children had been in the custody of GCCS for at least twelve months.

{¶ 18} Therefore, it is undisputed that at the time that the motion for permanent custody was filed on June 21, 2016, all of the children had been in the custody of GCCS for over twelve months. Even when it is read in conjunction with R.C. 2151.413(D), R.C. 2151.414(B)(1)(d) does not require twenty-two consecutive months of agency involvement to have transpired before GCCS can file its motion for permanent custody, only twelve months. Here, the children had been in the custody of GCCS for over twelve consecutive months when GCCS filed its motion for permanent custody. Therefore, we find that the juvenile court did not err in finding that R.C. 2151.414(B)(1)(d) was satisfied.

**Best Interests of the Children Determination**

{¶ 19} In this section of her assignment, Mother argues that the juvenile court erred when it found that awarding permanent custody to GCCS was in the children's best interest.

{¶ 20} R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the

child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. *In re K.M.*, 8th Dist. Cuyahoga No. 98545, 2012-Ohio-6010, ¶ 8, citing R.C. 2151.414(B)(1).

{¶ 21} R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 22} At the time of the permanent custody hearing, the foster mother testified that she, her husband, and their granddaughter had a developed a significant bond with the children. The foster mother testified that the children have also exhibited that they have a very close bond with one another. Significantly, the evidence also established that the children are adoptable, and that at the time of the hearing, the foster family expressed their desire to adopt all of the children. The foster mother also testified that

when she initially took the children into her home, the children all exhibited mental or physical issues, to wit: 1) H.M. was diagnosed with adjustment disorder and anxiety; 2) E.M. displayed developmental delays in his speech and fine motor skills and is on an individual education plan (IEP) to address his issues; 3) B.M. has anger management issues and displayed violent tendencies; 4) L.M. had problems sleeping and an iron deficiency; and 5) W.M. had cardiac issues and had to visit a geneticist. The foster mother testified that since the children had come to live with her and her family, many of their issues had resolved or improved significantly.

**{¶ 23}** Tasha Nguyen, Mother's current GCCS caseworker, testified that throughout the duration of the case, Mother has always been on supervised visitation, such that an employee always has to be in the room when she is interacting with her children. Nguyen also testified that Mother's weekly visits with the children should have increased, both in the amount of visits and the duration of said visits. However, Nguyen testified that when she asked Mother if she would like to increase her visits, Mother declined. In fact, Mother has only exercised one supervised visitation per week for the duration of the case.

**{¶ 24}** Additionally, at the visitations with the children, all of the GCCS caseworkers who testified agreed that Mother was passive and did not interact with the children in any significant way. The foster mother testified that the younger children, B.M., L.M. and W.M., exhibited reluctance to enter the visitation center when they had meetings with Mother. Although she was provided the foster mother's contact information (phone number, etc.), Mother rarely called the children. The foster mother also testified that Mother has not attended any of the children's medical or educational appointments since

2015.

{¶ 25} Furthermore, the record establishes that Mother has ongoing mental health problems that she has failed to properly address. Dr. Richard Bromberg testified that he conducted two psychological evaluations and parenting assessments on Mother in May of 2015 and June of 2016, respectively. In the first evaluation, Dr. Bromberg observed Mother interact with the children. Dr. Bromberg observed that Mother was passive towards the children and did not set any limits with respect to their behavior. Dr. Bromberg also diagnosed Mother with personality disorder with features from several personality disorder types, including schizoid avoidant, obsessive compulsive dependent, passive aggressive, and anti-social behavior. Dr. Bromberg also administered a global assessment of functioning to Mother. Dr. Bromberg testified that Mother received a score of forty-eight on the assessment, where any score below fifty represents the existence of serious psychological impairment. In the evaluation, Dr. Bromberg gave Mother the following recommendations: 1) supervised visitation with the children; 2) psychotropic medication; 3) weekly dialectical behavior therapy for a minimum of two years in both individual and group settings; 4) parenting skills training; 5) anger management classes; and 6) domestic violence education programming.

{¶ 26} Dr. Bromberg testified that the purpose of the second evaluation approximately one year later was to gauge Mother's progress. After observing Mother with the children again, Dr. Bromberg reported that Mother still exhibited the same passive behavior and failed to set any limits regarding the children's behavior. Dr. Bromberg described the scene as chaotic. Furthermore, Dr. Bromberg testified that the second evaluation that he administered was hampered by Mother's tendency to respond

to questions in a defensive manner, as well as under report and minimize her negative behaviors. Mother also reported that while she had received some general counseling and attended some domestic violence classes, she had not received any specialized treatment. In the second evaluation, Dr. Bromberg stated that he would continue to make the same recommendations included in the first evaluation, but it would be another eighteen to twenty-four months before her progress could be evaluated again. At the time of the permanent custody hearing, Dr. Bromberg testified that Mother would be unable to effectively parent the children and that it would be a minimum of two years, if not five to ten years, before the treatment would be successful. Finally, Dr. Bromberg testified that he was concerned by Mother's failure to acknowledge the harm caused to the children by Father's violent behavior.

**{¶ 27}** The record further establishes that Mother has failed to provide adequate housing for the children. Mother specifically testified at the permanent custody hearing that she did not have her own residence where the children could live with her. Two of Mother's GCCS caseworkers, Amanda Ray and Allison Hull, both testified that Mother refused to provide GCCS with the address of where she was currently living. GCCS caseworker Olivia Dean testified that Mother provided her with an address where she was living in Kentucky. However, when Dean traveled to the address provided, she could not locate Mother nor confirm that she lived there.

**{¶ 28}** With respect to the wishes of the children, H.M., the oldest child, expressed through her Court Appointed Special Advocate / Guardian ad Litem (GAL) that she wanted to remain with her foster family and that the best place for all of the children is with the foster family. Finally, the GAL indicated that the children's best interests would

be served by granting permanent custody to GCCS. Mother expresses the desire to retain custody of the children, but she failed to comply with the terms of her case plan, which was designed to aid her in rectifying the problems that resulted in GCCS's intervention. Specifically, the record establishes that Mother failed to maintain stable housing, and she has significant, ongoing psychological problems that she failed to properly address by the time of the permanent custody hearing.

{¶ 29} A juvenile court's decision on termination "will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." (Citations omitted). *In re A.U.*, 2d Dist. Montgomery No. 22264, 2008-Ohio-186, ¶ 15. Furthermore, "issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact." *In re A.J.S.*, 2d Dist. Miami No. 2007 CA 2, 2007-Ohio-3433, ¶ 22. The "rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *In re J.Y.*, 2d Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33.

{¶ 30} Our review of the record, transcript, and exhibits establishes that there is clear and convincing evidence which supports the juvenile court's decision finding that the statutory elements for termination under R.C. 2151.414(B) have been satisfied. Thus, the juvenile court did not err when it awarded permanent custody of the children to GCCS.

{¶ **31**} Mother's sole assignment of error is overruled.

{¶ **32**} Mother's sole assignment of error having been overruled, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.


Copies mailed to:

Nathaniel Luken
Christopher Green
Ben Swift
April Moore
Mari McPherson
Hon. Adolfo A. Tornichio