[Cite as *In re M.J.C.*, 2019-Ohio-2353.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|                    |     |                                      |
|--------------------|-----|--------------------------------------|
|                    | :   |                                      |
|                    | :   |                                      |
|                    | :   |                                      |
| IN RE: M.J.C.      | :   | Appellate Case No. 28295             |
|                    | :   |                                      |
|                    | :   | Trial Court Case No. 2016-6797       |
|                    | :   |                                      |
|                    | :   | (Appeal from Common Pleas Court –    |
|                    | :   | Juvenile Division)                   |
|                    | :   |                                      |
|                    | :   |                                      |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of June, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Appellee, M.C.C.S.

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
        Attorney for Appellant, Father

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Petitioner-appellant Father appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which terminated his parental rights and granted permanent custody of Father's child, M.J.C., to Montgomery County Children Services (hereinafter referred to as "MCCS"). Father filed a timely notice of appeal with this Court on February 14, 2019.[1]

{¶ 2} Initially, we note that Father and Mother have had three other children removed from their custody by MCCS. The record establishes that in April 2011, the juvenile court terminated Mother's parental rights to C.M.1. REB Tr. 8.[2] In June 2012, the juvenile court terminated Mother's parental rights to C.M.2. REB Tr. 7. In June 2015, the juvenile court terminated Mother and Father's parental rights to C.C. REB Tr. 8. MCCS caseworker Cathy Stokes testified that her concerns with Father when C.C. was removed were a lack of stable and appropriate housing, inappropriate parenting practices, and a pattern of domestic violence. REB Tr. 9. Stokes testified that her concerns for Mother when the other children were removed were her failure to properly address the domestic violence perpetrated by Father, a lack of stable and appropriate housing, inappropriate parenting practices, and income issues. REB Tr. 9-10.

{¶ 3} On October 31, 2016, Mother gave birth to M.J.C. When MCCS became aware of the child's birth, it opened a case file on M.J.C. based upon Mother and Father's

---

[1] We note that, although Mother's parental rights regarding M.J.C. were also terminated in this case, Mother did not appeal from the trial court's judgment. Therefore, on appeal, we need only address the merits of the trial court's judgment as it relates to Father.

[2] The transcript for the Reasonable Efforts Bypass hearing will be referred to as "REB Tr."

history with the agency. On November 3, 2016, MCCS filed a complaint alleging that M.J.C. was a dependent child and requesting temporary custody. On November 4, 2016, the trial court granted MCCS interim protective supervision of M.J.C. In a decision issued on December 13, 2016, the juvenile court adjudicated M.J.C. to be a dependent child and granted protective supervision to MCCS. Father was placed on the case plan with the following objectives: obtain a mental health assessment and follow the recommendations; obtain a drug and alcohol assessment; obtain and maintain stable housing; obtain and maintain sufficient income; complete parenting and domestic violence classes; complete anger management classes and follow any recommendations; submit to random drug screening; and sign releases of information.

{¶ 4} In early January 2017, Mother reported to the police and MCCS that Father had struck her in the face, giving her a black eye. As a result of the domestic violence, Father was arrested and incarcerated, and on January 13, 2017, M.J.C. was placed in the interim temporary custody of MCCS. Ultimately, Father was convicted of domestic violence and sentenced to two years in prison. On January 24, 2017, MCCS filed a motion to bypass reasonable efforts at reunification. On May 24, 2017, a hearing was held before the magistrate with respect to MCCS's motion for a reasonable efforts bypass. On the same day, the magistrate issued a decision granting said motion. Father was incarcerated at the time of the hearing, but he was represented by counsel who was present.

{¶ 5} Father filed objections and supplemental objections to the magistrate's decision on May 26, 2017, and June 6, 2017, respectively. The juvenile court overruled Father's objections and adopted the magistrate's decision granting MCCS's motion for a

reasonable efforts bypass in a judgment issued on September 22, 2017. Father appealed the juvenile court's judgment, but we dismissed Father's appeal for lack of a final appealable order. (Decision and Entry, CA 27752, December 1, 2017.)

{¶ 6} On November 30, 2017, MCCS filed a motion for permanent custody of M.J.C. A hearing was held before the magistrate regarding MCCS's motion for permanent custody on March 8, 2018. At the time of the hearing, Father was still incarcerated, but he was present at the hearing with his counsel. At the hearing, evidence was adduced that, due to Father's ongoing incarceration, he was unable to complete any of his case plan objectives. MCCS caseworker Jeffrey Johnson testified that he met with Father in prison in order to discuss his case plan objectives and review any programs the prison offered. Johnson testified that Father indicated that he had not participated in any programs at the prison, but he had made some inquiries. Johnson testified that at no point after their meeting did Father contact MCCS regarding any progress he had made on his case plan. At the time of the permanent custody hearing, MCCS was unable to verify whether Father had completed any of his case plan objectives. Johnson also testified that MCCS was unable to locate any relatives of Mother or Father with whom M.J.C. could be placed.

{¶ 7} M.J.C.'s foster mother, Jeana, also testified at the permanent custody hearing. Jeana testified that M.J.C. had been under her and her husband's care and supervision since January 10, 2017.[3] Jeana also testified that, in addition to caring for M.J.C., she had already adopted two of his biological brothers who had previously been

---

[3] As previously stated, the permanent custody hearing was held before the magistrate on March 8, 2018. Accordingly, at the time of the hearing, M.J.C. had been in Jeana's care for approximately 13 months.

removed from Mother's custody. Jeana testified that M.J.C. had bonded with his brothers and the whole family, in general. Jeana testified that M.J.C. was meeting his developmental milestones and was eating and sleeping well. Jeana testified that M.J.C. was an overall happy child and that she and her husband were considering adopting him.

{¶ 8} In a decision issued on April 20, 2018, the magistrate granted MCCS's motion for permanent custody of M.J.C. Father filed timely objections and supplemental objections to the magistrate's decision. On February 5, 2019, the juvenile court overruled Father's objections and awarded permanent custody of M.J.C. to MCCS.

{¶ 9} It is from this judgment that Father now appeals.

{¶ 10} For clarity's sake, we will address Father's second assignment of error out of sequence as follows:

THE JUVENILE COURT ERRED WHEN IT ALLOWED A REASONABLE

EFFORTS BYPASS.

{¶ 11} In his second assignment, Father contends that the juvenile court erred by granting MCCS's motion for a reasonable efforts bypass. Specifically, Father argues that, since his parental rights to C.C. were terminated prior to the birth of M.J.C., C.C. and M.J.C. were not "siblings" pursuant to R.C. 2151.419(A)(2)(e), and therefore, the statute did not apply in the instant case.

{¶ 12} R.C. 2151.419(A)(1) states in pertinent part:

Except as provided in division (A)(2) of this section, at any hearing held

pursuant to section 2151.28, division (E) of section 2151.31, or section

2151.314, 2151.33. or 2151.353 of the Revised Code at which the court

removes a child from the child's home or continues the removal of a child

from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

{¶ 13} Although the juvenile court is generally required to determine whether the agency has made reasonable efforts to reunify the child and parent(s), and it is up to the agency to prove that such reasonable efforts took place, R.C. 2151.419(A)(2) provides:

If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:

* * *

(e) The parent from whom the child was removed has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child.

{¶ 14} In the instant case, the juvenile court found that MCCS did not have to show reasonable reunification efforts on the grounds that Father had previously had his

parental rights involuntarily terminated with respect to C.C. Father cites *In re Nicholas P.*, 169 Ohio App.3d 570, 2006-Ohio-6213, 863 N.E.2d 1102 (6th Dist.), in support of his argument that C.C. and M.J.C. were not "siblings" pursuant to R.C. 2151.419(A)(2)(e), because his parental rights to C.C. were terminated prior to the birth of M.J.C.

{¶ 15} In *Nicholas*, the trial court granted the agency's request to "bypass" the mandatory showing of reasonable efforts to reunify the family on the grounds that the parents had previously had their parental rights involuntarily terminated. *Id.* at ¶ 34, citing R.C. 2151.419(A)(2)(e). The appellate court acknowledged that the statute set forth is an exception to the reasonable efforts requirement; however, it also pointed out that R.C. 2151.419(A)(3) provides the trial court with the discretion to override the exceptions listed in (A)(2). *Id.* at ¶ 34-36.

{¶ 16} R.C. 2151.419(A)(3) states: "[a]t any hearing in which the court determines whether to return a child to the child's home, the court may issue an order that returns the child in situations in which the conditions described in divisions (A)(2)(a) to (e) of this section are present." *Id.* at ¶ 35. Under the facts of *Nicholas*, the appellate court found that the only reason that the "bypass" of the reasonable efforts showing was granted was because the parents had previously had their parental rights involuntarily terminated in the past. *Id.* at ¶ 37. In fact, there was evidence that the parents had continued in and arguably benefited from the services that were provided to them in their previous child's custody case. *Id.* at ¶ 7. Thus, the appellate court held that, under those particular circumstances, the trial court should have exercised its discretionary powers and should not have applied the "bypass" exception, because the agency had "failed to provide current, affirmative evidence of the parent's unfitness and inability to care for the child."

*Id.* at ¶ 39.

**{¶ 17}** Initially, we note that the *Nicholas* court did not find that termination of parental rights severs the sibling relationship for the purposes of applying R.C. 2151.419(A)(2)(e). Rather, we agree with the reasoning of the Ninth District Court of Appeals in *In re A.W.*, 195 Ohio App.3d 379, 2011-Ohio-4490, 960 N.E.2d 379. In that case the court held that, although "the legislature did not qualify the word 'sibling' in any manner[,]" a previous termination of parental rights does not negate the sibling relationship established by virtue of the children having a common biological parent. *Id.* at ¶ 12. Moreover, we have treated children as siblings in similar permanent custody proceedings when applying other statutes requiring a sibling relationship. *See A.L.*, 2d Dist. Montgomery No. 26772, 2016-Ohio-423. Specifically, we applied R.C. 2151.414(E)(11), which requires a sibling relationship, in a permanent custody analysis involving a child who had not yet been born prior to the termination of a mother's parental rights to her older children. *Id.* at ¶ 53-54. Therefore, we find that M.J.C. and C.C.'s sibling relationship survived the termination of Father's parental rights with respect to C.C., and the trial court did not err when it applied R.C. 2151.419(A)(2)(e) in granting MCCS's motion for reasonable bypass.

**{¶ 18}** Relying on *Nicholas* again, Father also argues that "[a] prior adjudication of permanent custody, however, simply should not and does not constitute a de facto termination of parental rights as to later born children." *Id.* at ¶ 18. In *Nicholas*, the court found that the parents had made reasonable efforts but had not completed their case plan prior to the termination proceeding. The court also stated that the evidence further showed that the parents voluntarily continued with services and had successfully

completed their previous case plan requirements prior to the grant of permanent custody of the child.

{¶ 19} Accordingly, *Nicholas* found that the trial court abused its discretion in waiving the reasonable efforts requirement pursuant to R.C. 2151.419(A)(2)(e). Specifically, the court found that the juvenile court could not make a de facto decision to grant permanent custody based upon the prior termination of rights where (1) unsuitability had not been the basis for the prior terminations and (2) the parents had voluntarily completed required case plan objectives prior to the permanent custody hearing. Essentially, the *Nicholas* court held that, based upon the record, the prior termination of rights alone was insufficient to show by clear and convincing evidence that the children could not be placed with a parent within a reasonable period of time or should not be placed with a parent or that permanent custody was in the children's best interest.

{¶ 20} In the instant case, however, prior to the grant of the reasonable efforts bypass, the parties had already stipulated to an adjudication of dependency with respect to M.J.C. Additionally, whereas evidence was adduced that the issues leading to the removal of the child in *Nicholas* had been remedied, no evidence of Father's compliance with the case plan objectives existed in the instant case. At the time of the bypass hearing, Father was incarcerated and had not made any progress regarding his case plan objectives. At the bypass hearing, MCCS caseworker Stokes testified that, with respect to C.C., the agency had previously been concerned with Father's ability to find and maintain stable housing, domestic violence issues, and parenting practices. Stokes testified that MCCS had the same concerns in the instant case regarding M.J.C. Thus, we conclude that the trial court did not rely solely upon Father's prior termination of rights

regarding C.C. when it granted MCCS's motion for a reasonable efforts bypass. Rather, additional evidence of Father's unsuitability was adduced which supported the juvenile court's decision. Therefore, the juvenile court's grant of the reasonable efforts bypass was not a "de facto termination of parental rights."

{¶ 21} Father's second assignment of error is overruled.

{¶ 22} Father's first assignment is as follows:

THE JUVENILE COURT ERRED WHEN IT GRANTED PERMANENT CUSTODY OF THE CHILD TO [MCCS].

{¶ 23} In his first assignment, Father argues that the juvenile court erred when it awarded permanent custody of M.J.C. to MCCS, finding that it was in the child's best interest. Specifically, Father contends that he should have been allowed to work on his case plan objectives after his release from prison and that the juvenile court should not have granted permanent custody of M.J.C. to MCCS until he had the opportunity to do so.

{¶ 24} R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month

period. *In the Matter of H.M., E.M., B.M., Jr., L.M. and W.M.*, 2d Dist. Greene No. 2017-CA-42, 2018-Ohio-989, citing R.C. 2151.414(B)(1).

{¶ 25} R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 26} As previously stated, at the time of the permanent custody hearing, Father was still incarcerated. At the hearing, evidence was adduced that due to Father's ongoing incarceration, he was unable to complete any of his case plan objectives. MCCS caseworker Johnson testified that he met with Father in prison in order to discuss his case plan objectives and review any programs the prison offered. Johnson testified that Father indicated that he had not participated in any programs at the prison, but he had made some inquiries. Johnson testified that at no point after their meeting did Father contact MCCS regarding any progress he had made on his case plan. Additionally, at the time of the permanent custody hearing, MCCS was unable to verify whether Father had completed any of his case plan objectives. Johnson also testified that MCCS was unable to locate any relatives of Mother or Father with whom M.J.C. could be placed.

{¶ 27} Furthermore, Jeana, M.J.C.'s foster mother, also testified at the permanent custody hearing. Jeana testified that M.J.C. had been in her and her husband's care since January 10, 2017. Jeana also testified that in addition to caring for M.J.C., she had already adopted two of his biological brothers who had previously been removed from Mother's custody. Jeana testified that M.J.C. had bonded with his brothers and the whole family, in general. Jeana testified that M.J.C. was meeting his developmental milestones and was eating and sleeping well. Jeana testified that M.J.C. was an overall happy child and that she and her husband were considering adopting him.

{¶ 28} Finally, we note that the guardian ad litem indicated that the M.J.C.'s best interest would be served by granting permanent custody to MCCS. Father expressed the desire to retain custody of M.J.C., but he failed to comply with the terms of his case plan, which was designed to aid him in rectifying the problems that resulted in MCCS's intervention. We note again that Father was incarcerated for almost the entirety of M.J.C.'s custody proceedings because he was convicted of domestic violence against Mother. Specifically, the record establishes that Father failed to maintain stable housing, failed to find a stable and sufficient income source, and had a significant, ongoing domestic violence problem that he failed to properly address by the time of the permanent custody hearing.

{¶ 29} A juvenile court's judgment on termination "will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." (Citations omitted). *In re A.U.*, 2d Dist. Montgomery No. 22264, 2008-Ohio-186, ¶ 15. Furthermore, "issues

relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact." *In re A.J.S.*, 2d Dist. Miami No. 2007 CA 2, 2007-Ohio-3433, ¶ 22. The "rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *In re J.Y.*, 2d Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33.

**{¶ 30}** Our review of the record, transcript, and exhibits establishes that there was clear and convincing evidence which supported the juvenile court's determination that the statutory elements for termination under R.C. 2151.414(B) had been satisfied. Thus, the juvenile court did not err when it awarded permanent custody of M.J.C. to MCCS.

**{¶ 31}** Father's first assignment of error is overruled.

**{¶ 32}** Father's assignments of error having been overruled, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Robert Alan Brenner
Jeffrey Livingston
Byron Shaw, GAL
Hon. Helen Wallace