[Cite as *In re R.M.*, 2021-Ohio-324.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

IN THE MATTER OF:

R.M.

:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 2020-CA-8

Trial Court Case No. 2018-JC-18

(Appeal from Common Pleas
Court – Juvenile Division)

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of February, 2021.

. . . . . . . . . . .

MICHAEL T. COLUMBUS, Atty. Reg. No. 0076799, 130 West Second Street, Suite 2103, Dayton, Ohio 45402
    Attorney for Defendant-Appellant, J.M.

SAMANTHA B. WHETHERHOLT, Atty. Reg. No. 0092010, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, OH 43078
    Attorney for Plaintiff-Appellee, C.C.D.J.F.S.

. . . . . . . . . . . .

HALL, J.

**{¶ 1}** Father appeals from the trial court's judgment entry terminating his parental rights and awarding Champaign County Department of Job and Family Services ("CCDJFS") permanent custody of his child, R.M.

**{¶ 2}** Father advances two assignments of error. First, he contends CCDJFS lacked standing to move for permanent custody absent a prior finding by the trial court that the agency need not make "reasonable efforts" to return the child to him. Second, he claims CCDJFS failed to present clear and convincing evidence to support an award of permanent custody to the agency.

**{¶ 3}** The record reflects that CCDJFS filed a complaint in December 2018 alleging that R.M. was abused and dependent based on sexual abuse committed by Father. At some point, Father was arrested in connection with the sexual-abuse allegations. CCDJFS moved to amend the complaint to include his incarceration as a basis for dependency. On April 5, 2019, by agreement of the parties, the trial court adjudicated R.M. dependent, dismissed the abuse allegation, and transferred temporary custody from a third-party caregiver to CCDJFS. The trial court's entry included a finding that the agency had made "reasonable efforts" to prevent the removal and placement of the child. On July 3, 2019, the trial court filed an entry following a review hearing and again made a "reasonable efforts" finding. On July 26, 2019, a case plan was filed. It cited a permanency goal of reunifying Father and R.M. On September 16, 2019, however, CCDJFS filed a motion for permanent custody, seeking to terminate Father's parental rights. Among other things, the motion cited the fact that Father had been convicted of sexually abusing R.M. and another juvenile and had been sentenced to 13 years in prison.

In light of Father's convictions, CCDJFS also argued that, when deciding the permanent-custody issue, the trial court need not find that the agency had made "reasonable efforts" to return the child home. In any event, CCDJFS's motion did outline efforts the agency had made to find someone to take custody of R.M. The trial court held a hearing on the permanent-custody issue on January 16, 2020. On February 27, 2020, the trial court filed a judgment entry sustaining CCDJFS's motion for permanent custody. In relevant part, the trial court found as follows:

- [Father] is the sole legal parent of [R.M.];

- On March 27, 2019, [Father] was convicted of two (2) counts of Gross Sexual Imposition, O.R.C. 2907.05(A)(4)(c)(2) and the victim of both offenses was [R.M.];

- On March 27, 2019, [Father] was sentenced to thirteen (13) years to the Ohio Department of Rehabilitation and Correction;

- [R.M.] is adoptable and does not meet the requirements for a Planned Permanent Living Arrangement;

- CCDJFS was not able to find any family members to take custody of [R.M.];

- Although [R.M.] was somewhat vague when asked about his wishes both [R.M.'s] attorney and the Guardian ad litem believe that he is not opposed to a granting of permanent custody to CCDJFS;

- CCDJFS is not required to make reasonable efforts because of [Father's] conviction under R.C. 2907.05 with the victim being [R.M.];

- The Guardian ad litem believes it is in [R.M.'s] best interests for the Court

to grant permanent custody to CCDJFS; and

- [R.M.] is happy and well adjusted in his foster home.

(Judgment Entry at 2.)

{¶ 4} The trial court determined by clear and convincing evidence that R.M. could not be placed with Father, his sole legal parent, within a reasonable amount of time, that the child should not be placed with Father, and that awarding permanent custody to CCDJFS was in the child's best interest. (*Id.*)

{¶ 5} In his first assignment of error, Father contends CCDJFS lacked standing to move for permanent custody absent a prior determination by the trial court that the agency was not required to make "reasonable efforts" to reunite Father and R.M. Stated differently, Father suggests that a reasonable-efforts bypass finding by the trial court was *a prerequisite* to CCDJFS seeking permanent custody. Because the trial court made a reasonable-efforts bypass finding only in its final judgment entry awarding CCDJFS permanent custody, rather than *before* the agency filed its motion, Father asserts that CCDJFS lacked standing to seek permanent custody.

{¶ 6} Upon review, we find Father's argument unpersuasive. The trial court's failure to make a "reasonable efforts" finding before CCDJFS moved for permanent custody did not deprive the agency of standing to do so. To support his argument, Father relies on R.C. 2151.413(D)(2). With some exceptions, R.C. 2151.413(D)(1) and (2) compel a children-services agency to pursue permanent custody under certain circumstances. Specifically, a children-services agency "shall" move for permanent custody (1) if a child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period or (2) if the trial court makes a determination under

R.C. 2151.419(A)(2) that the agency need not make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home. Under either of these circumstances, a children-services agency generally must move for permanent custody. The second circumstance often occurs when an agency moves for a reasonable-efforts bypass finding by the trial court during the pendency of a dependency, abuse, or neglect case while the agency has temporary custody and prior to its moving for permanent custody. *See, e.g., In re M.J.C.*, 2019-Ohio-2353, 138 N.E.3d 626, ¶ 4-5 (2d Dist.) (noting that the trial court granted the agency's reasonable-efforts bypass motion based on father's incarceration while the agency had temporary custody and before the agency moved for permanent custody). If the trial court sustains such a motion, R.C. 2151.413(D)(2) obligates the children-services agency to respond by moving for permanent custody.

{¶ 7} It does not follow, however, that a children-services agency *cannot* move for permanent custody unless and until a trial court makes a reasonable-efforts bypass determination under R.C. 2151.419(A)(2). In the present case, CCDJFS's permanent-custody motion cited R.C. 2151.415(A) as one of the statutes pursuant to which the motion was filed. Notably, R.C. 2151.415(A)(4) authorizes a children-services agency to move for permanent custody prior to expiration of a temporary custody order without regard to whether the trial court has made a reasonable-efforts bypass determination. *In re A.J.*, 3d Dist. Crawford No. 3-15-12, 2016-Ohio-248, ¶ 30 ("After a child has been adjudicated neglected and temporary custody has been granted to a children services agency, the agency may file a motion for permanent custody under R.C.

2151.415(A)(4).”). Therefore, under R.C. 2151.415(A)(4), CCDJFS had standing to seek permanent custody.

{¶ 8} Based on the record before us, we also see no error in the trial court's substantive determination in its judgment entry that CCDJFS was not required to make reasonable efforts to reunite Father and R.M. As set forth above, Father was R.M.'s only legal parent. Father was serving a 13-year prison sentence for criminal conduct that included sexually abusing R.M. The record reflects that CCDJFS unsuccessfully attempted to locate a family member or friend to take custody of R.M. Under these circumstances, Father unquestionably could not (and should not) be reunited with R.M. Indeed, R.C. 2151.419(A)(2)(a)(iv) states that a trial court "shall" find reasonable efforts at reunification not required when a parent is convicted of gross sexual imposition involving the child at issue. Following Father's criminal conviction, there was no longer any reasonable effort at reunification to be made. Even if we assume, purely arguendo, that the trial court should have made its reasonable-efforts determination sooner, any error in that regard would be harmless, as it was impossible for R.M. to return home with Father, the child's sole legal parent. Accordingly, we overrule Father's first assignment of error.

{¶ 9} In his second assignment of error, Father contends the trial court's permanent-custody decision was not supported by clear and convincing evidence. More specifically, Father asserts that CCDJFS made "broad, unsupported statements" about his sexual activity with R.M. as well as his criminal conviction. Despite the fact that the guardian ad litem interviewed Father, R.M., and both foster parents, Father also characterizes the guardian ad litem's involvement as "minimal." Father additionally

questions the guardian ad litem's recommendation of permanent custody to CCDJFS, noting that it was based primarily on Father's conviction for sexually abusing R.M. Father suggests that an appeal of his criminal convictions or post-conviction relief might result in reversal and justify reunification. For these reasons, Father contends the record lacks clear and convincing evidence to support the trial court's findings that R.M. could not and should not be placed with him within a reasonable time and that awarding permanent custody to CCDJFS was in the child's best interest.

{¶ 10} Upon review, we find Father's second assignment of error to be unpersuasive. The evidence before the trial court established that Father had been convicted of sexual abuse involving R.M. and had been sentenced to 13 years in prison. The child was not eligible for a planned permanent living arrangement, and CCDJFS was unable to find any family or friends willing to accept custody. The guardian ad litem believed that awarding the agency permanent custody was in the child's best interest. R.M.'s attorney also reported that that the child, who was 13 years old, was not opposed to the court's awarding CCDJFS permanent custody. The record further reflects that R.M. had a good relationship with his foster parents. At the time of the hearing, R.M. had been in CCDJFS's temporary custody for more than a year. Father was the child's only legal parent, and Father's lengthy prison sentence precluded him from providing a secure and stable home, which the child needed. Although Father suggests that his conviction could be reversed on appeal or through post-conviction relief, this court affirmed the conviction in March 2020 and the Ohio Supreme Court later denied review. We note too that Father has not identified any post-conviction filing or even any possible grounds for post-conviction relief.

**{¶ 11}** On the record before us, we find clear and convincing evidence supporting the trial court's determination that R.M. could not and should not be returned to Father within a reasonable time and that awarding permanent custody to CCDJFS was in the child's best interest. In fact, we fail to see how any other disposition would have been possible under the circumstances. The second assignment of error is overruled.

**{¶ 12}** The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Michael T. Columbus
Samantha B. Whetherholt
Vincent Foulk, GAL
Hon. Lori L. Reisinger