[Cite as *In re N.M.P.*, 2018-Ohio-5072.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

IN THE MATTER OF:                    :        **O P I N I O N**
N.M.P., DEPENDENT CHILD.
                                     :
                                              CASE NO.  2018-P-0056

Civil Appeal from the Portage County Court of Common Pleas, Juvenile Division.
Case No. 2018 JCF 00506.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Brandon J. Wheeler*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee Portage County Department of Job and Family Services).

*Neil P. Agarwal*, 3732 Fishcreek Road, Suite 288, Stow, OH 44224-4379 (For Appellant Nicole Hofeldt).

*Richard C. Lombardi*, 240 South Chestnut Street, Ravenna, OH 44266 (Guardian ad litem).


TIMOTHY P. CANNON, J.

{¶1} Appellant, Nicole Hofeldt, appeals from the July 25, 2018 judgment entry of the Portage County Court of Common Pleas, Juvenile Division, terminating her parental rights to her child, N.M.P. (D.O.B. 4/11/2007), and granting permanent custody to the Portage County Department of Job and Family Services ("PCDJFS").  The trial court's judgment is affirmed.

{¶2} On May 24, 2017, N.M.P. was removed from appellant, who was unable to provide him with a stable environment. In case No. 2017 JCC 489, N.M.P. was adjudicated dependent and placed in the temporary custody of PCDJFS.

{¶3} On June 5, 2018, PCDJFS filed a motion for permanent custody of N.M.P., which was assigned case No. 2018 JCF 00506. The motion stated that "[p]ursuant to R.C. 2151.414(B)(b) and 2151.414(B)(1)(d) N.M.P. has been in the custody of PCDJFS for twelve or more months of a consecutive twenty-two month period." The motion alleged:

> The child, N.M.P. was removed from his mother on May 24, 2017 and placed in the interim pre-dispositional custody of PCDJFS by Court Order on May 25, 2017. Adjudication was held on June 14, 2017. N.M.P. has been in the custody of PCDJFS pursuant to a Dispositional Order since August 30, 2017. N.M.P. has remained in the temporary custody of PCDJFS from August 30, 2017 to present. * * * Prior to the current action, N.M.P. was in the temporary custody of PCDJFS from March 11, 2015 until March 10, 2017 under case No. 2015 JCC 183. On March 11, 2017 N.M.P. was returned to the legal custody of his mother, [appellant]. N.M.P. was then re-removed from the custody of his mother on May 24, 2017 and this current action began.

The motion further stated: "Additionally, [p]ursuant to R.C. 2151.011(C) N.M.P. has been abandoned by his parents. Neither of N.M.P.'s parents have visited or had any contact whatsoever with N.M.P. since July 20, 2017." The motion also alleged facts indicating it was in N.M.P.'s best interest to be placed in the permanent custody of the agency.

{¶4} A guardian ad litem was appointed for N.M.P., and appellant was appointed counsel. A hearing was held on July 16, 2018, at which Kelly Davis, the PCDJFS caseworker, and Attorney Richard Lombardi, the guardian ad litem, testified. Neither appellant nor N.M.P.'s father appeared; however, appellant's attorney was present.

2

{¶5} As a preliminary matter, certified copies of the record from 2017 JCC 489 were entered into evidence.

{¶6} Ms. Davis testified that appellant and N.M.P.'s father failed to meet the objectives of their case plans, had minimal contact with N.M.P., and were unable to provide legally secure housing for N.M.P. Ms. Davis testified that appellant was on probation and struggled with drug use and mental health issues. Ms. Davis had been unable to locate or successfully contact appellant and last had contact with her on October 2, 2017. Both appellant and N.M.P.'s father were permitted visits with N.M.P. twice a month for two hours. Ms. Davis testified that appellant attended one out of 28 visits, and N.M.P.'s father did not attend any visits.

{¶7} Ms. Davis testified that N.M.P. was placed with a foster family with whom he has developed a bond. N.M.P. also has a biological half-sister with whom he has a bond, and N.M.P.'s foster parents are supportive of N.M.P. maintaining a relationship with her.

{¶8} Ms. Davis investigated N.M.P.'s relatives as potential legal custodians, but the relatives expressed no interest in taking legal custody of N.M.P.

{¶9} The trial court allowed Ms. Davis to provide testimony regarding N.M.P.'s wishes and his best interest over the objections of appellant's counsel. Ms. Davis stated that she discussed N.M.P.'s wishes with both N.M.P. and the guardian ad litem and indicated she believed granting permanent custody to the agency would be in N.M.P.'s best interest. Ms. Davis stated:

> N.M.P. states he wants normal parents. [H]e feels that he was cheated by having Nicole and John as his parents, and he wants the family that he sees with [his foster parents] and their two children. [T]hey give him security. He feels safe. He doesn't feel

3

threatened. He knows tomorrow when he wakes up it's going to be the same old routine as two weeks ago when he woke up.

{¶10} Ms. Davis testified that N.M.P. has been in the temporary custody of the agency for 12 of the preceding 22 months, inclusive of cases prior to 2017 JCC 489. Appellant's counsel objected to Ms. Davis' testimony about the previous cases because those records were not in evidence. Counsel for PCDJFS requested the trial court take judicial notice of 2015 JCC 183. Although appellant's counsel objected to the court's taking judicial notice, the trial judge indicated he would review 2015 JCC 183.

{¶11} Attorney Lombardi testified[1] that N.M.P.'s foster family loves and is bonded with him. He further testified that N.M.P. has "no desire, none, to be with [appellant]" and explained he spoke with "the child on more than one occasion, and [N.M.P.] made it very clear that he does - - absolutely does not want to have contact with [appellant] or her family." Attorney Lombardi further stated: "[T]his child wants more than anything on earth to stay and live with [his foster family]. I believe it's in the child's best interest, and I've never felt stronger about a case."

{¶12} After the hearing, on July 20, 2018, PCDJFS filed certified copies of journal entries from 2015 JCC 183 in the trial court.

{¶13} The trial court entered judgment on July 25, 2018. The trial court determined that "[p]ursuant to R.C. 2151.414(B) N.M.P. has been abandoned by his parents"; "[p]ursuant to R.C. 2151.414(B)(1)(a) * * * N.M.P., cannot nor should not [sic]

---

[1]. After counsel for PCDJFS indicated he did not intend to call Attorney Lombardi as a witness, the trial judge requested that Attorney Lombardi testify and give the court his impressions regarding N.M.P. The parties and court agreed that the guardian ad litem would not be sworn in prior to giving his testimony. We further note a guardian ad litem's report is not part of our record on appeal. At the hearing, Attorney Lombardi indicated he filed a report in the case for N.M.P.'s half sister. He explained that that report applied to both children. He provided the report to the trial judge at the hearing, and copies were made for appellant's attorney. Although appellant's counsel raised an objection regarding the report at the hearing, appellant has not raised any issue about the report on appeal.

4

be placed with his parents within a reasonable amount of time"; and "[p]ursuant to R.C. 2151.414(B)(1)(d) * * * N.M.P., has been in the Temporary Custody of [PCDJFS] for at least twelve (12) months of a consecutive twenty-two (22) month period, inclusive of Case No. 2015 JCC 183." Further, the trial court made findings regarding N.M.P.'s best interest. The trial court ordered appellant's parental rights permanently terminated and that N.M.P. be placed in the permanent custody of PCDJFS.

{¶14} Appellant noticed a timely appeal. She asserts six assignments of error.

{¶15} Appellant's first assignment of error states:

{¶16} "The trial court committed reversible error when it allowed a children services protective caseworker to testify as to the child's best interest and present inadmissible hearsay regarding the child's wishes."

{¶17} Appellant first argues the trial court erred when it allowed the caseworker to "testify as to her opinion as to what is in the best interest of the child." In support, appellant directs us to consider *In re Ridenour*, 11th Dist. Lake Nos. 2003-L-146, *et seq.* 2004-Ohio-1958; *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430; and *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178 (Jan. 2, 2002). Those cases provide that under R.C. 2151.414(D)(1)(b), a child's wishes must be expressed either directly by the child or through the guardian ad litem, and a caseworker's testimony cannot be considered as an expression of the child's wishes in lieu of a guardian ad litem's report. *Ridenour, supra*, at ¶47; *A.K., supra*, at ¶27; *Smith, supra*, at *6. Appellant, however, has failed to direct us to any authority that stands for the proposition that a caseworker is precluded from testifying as to his or her opinion regarding the best interest of a child. Appellant's argument is not well taken.

5

**{¶18}** Appellant next argues the caseworker's testimony regarding N.M.P.'s wishes was hearsay and should have been excluded at the hearing.

**{¶19}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The trial court does not have discretion to admit hearsay "except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802. *See also State v. DeMarco*, 31 Ohio St.3d 191, 195 (1987). Therefore, we apply a de novo review to determine whether the testimony here constitutes hearsay or non-hearsay. *See John Soliday Fin. Group, L.L.C. v. Pittenger*, 190 Ohio App.3d 145, 2010-Ohio-4861, ¶28 (5th Dist).

**{¶20}** To determine the best interest of a child, the trial court must consider a specific non-exclusive list of factors set forth in R.C. 2151.414(D)(1), including "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]" R.C. 2151.414(D)(1)(b); *see also In re M.J.*, 11th Dist. Ashtabula No. 2011-A-0007, 2011-Ohio-2714, ¶54; *In re Jacobs*, 11th Dist. Geauga No. 99-G-2231, 2000 WL 1227296, *4 (Aug. 25, 2000). Thus, R.C. 2151.414(D)(1)(b) authorizes the guardian ad litem in a permanent custody hearing to give hearsay testimony regarding a child's wishes. *See Sypherd v. Sypherd*, 9th Dist. Summit No. 25815, 2012-Ohio-2615, ¶13. However, the clear language of the statute indicates the child's wishes may *only* be expressed directly by the child or through the guardian ad litem. *Ridenour*, *supra*, at ¶47 (citations omitted). "[A] caseworker's testimony cannot be considered as an expression of the minor child's wishes in lieu of

6

the GAL's report." *In re T.L.M.*, 11th Dist. Portage Nos. 2010-P-0008, *et seq.*, 2010-Ohio-3553, ¶47, citing *Ridenour*, *supra*, at ¶47.

{¶21} It was error for the trial court to allow the caseworker's testimony regarding N.M.P.'s wishes over the objection of appellant's counsel. The error, however, was harmless. The trial court determined that N.M.P. was capable of verbalizing his own wishes. Further, the guardian ad litem was present at the hearing and testified regarding N.M.P.'s wishes. The guardian ad litem gave compelling testimony that N.M.P. wished to stay with his foster family and did not want to return to his parents and supported that testimony with the reasons underlying N.M.P.'s wishes. There is no testimony disputing that of the guardian ad litem. Further, the trial court did not state that it relied exclusively on the caseworker's testimony, and its judgment entry indicates it considered the guardian ad litem's testimony.

{¶22} Appellant contends the guardian ad litem's "testimony does not constitute evidence upon which the trial court may make any factual findings." Appellant essentially argues that the guardian ad litem's testimony about N.M.P.'s wishes must be excluded as hearsay.

{¶23} Evid.R. 802 provides that "[h]earsay is not admissible except as otherwise provided by * * * statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio[.]" As stated above, R.C. 2151.414(D)(1)(b) authorizes the guardian ad litem to give hearsay testimony regarding the child's wishes. *See Sypherd*, *supra*, at ¶13. To the extent appellant argues the guardian ad litem's testimony was hearsay because N.M.P. was capable of expressing his own wishes, the Ohio Supreme Court has held that R.C. 2151.414(D)(1)(b) "unambiguously gives the trial court the choice of considering the child's wishes directly from the child *or through the guardian*

7

*ad litem.*" *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶55 (emphasis added). Appellant's argument is not well taken.

{¶24} Appellant's first assignment of error is without merit.

{¶25} Appellant's fifth assignment of error states:

{¶26} "The trial court committed reversible error when in granting permanent custody under R.C. 2151.414(b)(1)(d) when the county children services agency has not had agency involvement with the child for at least twenty-two consecutive months prior to the filing of permanent custody."

{¶27} Appellant argues that under R.C. 2151.414(B)(1)(d), PCDJFS was required to have agency involvement with N.M.P. for at least 22 months before it could file for permanent custody.

{¶28} We review the trial court's interpretation and application of a statute under a de novo standard of review. *State v. Phillips*, 11th Dist. Trumbull No. 2008-T-0036, 2008-Ohio-6562, ¶11. "De novo review is independent and without deference to the trial court's determination." *State v. Henderson*, 11th Dist. Portage No. 2010-P-0046, 2012-Ohio-1268, ¶10 (citation omitted).

{¶29} "A primary rule of statutory construction is to apply the statute as it is written when its meaning is unambiguous and definite." *In re J.C.*, 9th Dist. Summit No. 28865, 2018-Ohio-2555, ¶13, citing *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545 (1996) & R.C. 1.49. A court may not ignore or add words when construing a statute. *Id.*, citing *State ex rel. Burrows v. Indus. Comm. of Ohio*, 78 Ohio St.3d 78, 81 (1997); *see also Blair v. Sugarcreek Twp. Bd. of Trustees*, 132 Ohio St.3d 151, 2012-Ohio-2165, ¶19.

{¶30} R.C. 2151.414(B)(1)(d) provides that a court may grant permanent custody of a child to an agency "if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency * * * and * * * [t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period[.]"

{¶31} Appellant directs this court to follow the Sixth District Court of Appeals' interpretation of the "12 of 22" language as set forth in *In re K.L.,* 6th Dist. Lucas Nos. L-17-1201 & L-7-1210, 2017-Ohio-9003. In that case, the Sixth District interpreted the language, "consecutive twenty-two-month period," to mean 22 consecutive months of *agency involvement.* *Id.* at ¶48 ("If the 22-consecutive months does not mean 22 months of agency involvement, there was no need to set forth that number in the statute."). Pursuant to this interpretation, the agency must be involved with a child for at least 22 months before it can file a motion for permanent custody. *See id.* at ¶40.

{¶32} By construing "a consecutive twenty-two-month period" to require 22 months of *agency involvement*, the Sixth District added language to the statute, altering its plain and unambiguous meaning. *See J.C.*, *supra*, at ¶11-13; *In re H.M.*, 2d Dist. Greene No. 2017-CA-42, 2018-Ohio-989, ¶14-18. We decline to adopt the Sixth District's interpretation of R.C. 2151.414(B)(1)(d).

{¶33} Further, this court has previously construed the language of R.C. 2151.414(B)(1)(d) as requiring 12 or more months of temporary custody in a consecutive 22 month period. *See In re Stilllman*, 11th Dist. Ashtabula No. 2003-A-0063, 2003-Ohio-6228, ¶51; *In re Cather*, 11th Dist. Portage Nos. 2002-P-0014, *et seq.*, 2002-Ohio-4519, ¶43; *In re M.G.*, 11th Dist. Geauga No. 2013-G-3162, 2014-Ohio-974,

9

¶15. Accordingly, "[i]f, at the time the agency moves for permanent custody, the child has been in the temporary custody of one or more children services agencies for a total of 12 months out of a 22-month time period, R.C. 2151.414(B)(1)(d) is satisfied." *J.C.*, *supra*, at ¶11. Appellant's argument is not well taken.

{¶34} Appellant's fifth assignment of error is without merit.

{¶35} Appellant's second assignment of error states:

{¶36} "The trial court committed reversible error when it took judicial notice of a separate proceeding during the permanent custody hearing."

{¶37} Appellant contends the trial court improperly took judicial notice of 2015 JCC 183 to establish that N.M.P. had been in the agency's custody for 12 months of a consecutive 22 month period under R.C. 2151.414(B)(1)(d).

{¶38} "A trial court may not take judicial notice of prior proceedings in the court but may only take judicial notice of prior proceedings in the immediate case." *Diversified Mtge. Investors, Inc. v. Athens Cty. Bd. of Revision*, 7 Ohio App.3d 157, 157 (4th Dist.1982); *see also In re Knotts*, 109 Ohio App.3d 267, 271 (3d Dist.1996); *Woodman v. Tubbs Jones*, 103 Ohio App.3d 577, 580 (8th Dist.1995); and *Johnson v. Summit Cty. Court of Common Pleas*, 11th Dist. Geauga No. 2014-G-3207, 2015-Ohio-211, ¶4, quoting *State v. Blaine*, 4th Dist. Highland No. 03CA9, 2004-Ohio-1241, ¶17 (collecting cases). The rationale behind this rule is that, "'if a trial court takes notice of a prior proceeding, the appellate court cannot review whether the trial court correctly interpreted the prior case because the record of the prior case is not before the appellate court.'" *Johnson*, *supra*, at ¶4, quoting *Blaine*, *supra*, at ¶17.

{¶39} "Even if the separate prior case was heard by the identical trial court, that court cannot take judicial notice of any determination made in the separate case.

10

Rather, any detail about the separate case can only be established through the submission of evidence." *Johnson*, *supra*, at ¶5, citing *In re Pyle*, 7th Dist. Belmont No. 91-B-27, 1992 WL 98028, *1 (May 6, 1992); *see also State v. Baiduc*, 11th Dist. Geauga No. 2006-G-2711, 2007-Ohio-4963, ¶24.

{¶40} These concerns are not at issue in this case. PCDJFS referenced 2015 JCC 183 in its motion for permanent custody. At the permanent custody hearing, the caseworker testified that N.M.P. had previously been in the temporary custody of the agency. She testified she had that knowledge because she has "access to previous court records, the previous case plans." On July 20, 2018, certified copies of a magistrate's order and several journal entries from 2015 JCC 183 were filed with the trial court. These documents are part of our record on appeal. Accordingly, it was not error for the trial court to consider these documents as evidence that N.M.P. has previously been in temporary agency custody.

{¶41} Appellant's second assignment of error is without merit.

{¶42} Appellant's third assignment of error states:

{¶43} "The trial court committed reversible error when it allowed the State to supplement the record after the permanent custody hearing in violation of Mother's right to due process."

{¶44} Appellant argues the trial court engaged in a "trial by ambush" and violated her due process rights when it "allowed [PCDJFS] to submit documents after the permanent custody hearing had concluded, did not give a copy of those documents to Mother, did not give Mother a reasonable opportunity to review or object to the submission of those documents before, during, or after the permanent custody hearing,

11

and especially for the trial court to rely upon those documents in the granting of permanent custody to PCDJFS."

**{¶45}** "A parent's right to raise his or her children is an 'essential' and 'basic' civil right." *In re Sheffey*, 11th Dist. Ashtabula No. 2005-A-0063, 2006-Ohio-619, ¶22, quoting *In re Murray*, 52 Ohio St.3d 155, 157 (1990). "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the state." *Id.*, citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). "Accordingly, when the state initiates a permanent-custody proceeding, parents must be provided with fundamentally fair procedures in accordance with the due process provisions under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution." *Id.* at ¶21.

**{¶46}** In the context of permanent custody proceedings, the issue of supplemental evidence submitted after the hearing has arisen when a guardian ad litem filed his or her report subsequent to the hearing. In this context, "[o]nce the trial court makes the decision to allow evidence to enter the record after the hearing, the trial court should provide an opportunity for cross-examination and the presentation of rebuttal evidence." *In re Kangas*, 11th Dist. Ashtabula No. 2006-A-0010, 2006-Ohio-3433, ¶37, citing *Webb v. Lane*, 4th Dist. Athens No. 99CA12, 2000 WL 290383, *3 (Mar. 15, 2000). "'Without these safeguards, there are no measures to ensure the accuracy of the information provided and the credibility of those who made statements.'" *Id.*, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, ¶25.

**{¶47}** We do not determine that appellant's due process rights were violated. As stated above, PCDJFS referred to 2015 JCC 183 in its motion for permanent custody.

Further, the credibility of the certified copies from 2015 JCC 183 is readily ascertainable, and appellant concedes she was notified the documents had been submitted on the same day they were filed. Appellant also had the opportunity to cross-examine the caseworker about the existence of the previous case. *See Ridenour*, *supra*, at ¶28 (determining that where the guardian ad litem is subject to cross-examination at the permanent custody hearing and the untimely report does not provide any new or different evidence, a parent is not prejudiced by submission of the untimely report and no additional hearing is required).

{¶48} At the hearing, appellant's counsel stated he needed to confront the records from 2015 JCC 183 to determine whether it involved the same mother and child and whether the child was placed in the temporary custody of the agency in that case. Appellant's counsel could have disputed those facts during the hearing but did not, and there is no genuine issue that 2015 JCC 183 pertains to appellant and N.M.P. That information is apparent from the face of the 2015 JCC 183 documents. Further, the record from 2017 JCC 489, which is part of our record on appeal, indicates N.M.P. was previously removed from appellant and placed in agency custody. A case review dated November 2, 2017, states: "This is the second time [N.M.P.] has been in JFS custody. * * * His mom gained custody back in March 2017 but came to the agency and stated she could not provide a safe and stable home for [N.M.P.]." The case review further states: "[N.M.P.] was removed from [appellant's] custody in March 2015 and returned to his mothers [sic] custody in March 2017 and then re-removed for the same concerns in May 2017."

{¶49} Appellant's third assignment of error is without merit.

{¶50} Appellant's sixth assignment of error states:

{¶51} "The trial court committed reversible error when in granting permanent custody under R.C. 2151.414(b)(1)(d), as that finding is against the manifest weight of the evidence." [sic.]

{¶52} "'R.C. 2151.414 sets forth a two-part test governing whether to award permanent custody to a public services agency.'" *In re K.M.*, 11th Dist. Trumbull No. 2017-T-0059, 2017-Ohio-8286, ¶36, quoting *In re J.S.*, 8th Dist. Cuyahoga Nos. 101991 & 101992, 2015-Ohio-2701, ¶47. "First, after a hearing, the court must find by clear and convincing evidence that granting permanent custody of the child to the agency is in the best interest of the child upon considering all relevant factors including those in R.C. 2151.414(D)." *Id.* "'Second, a court must make one of the findings delineated in R.C. 2151.414(B)(1)(a)-(e)." *Id.* at ¶37, quoting *In re D.S.*, 11th Dist. Trumbull No. 2015-T-0062, 2015-Ohio-4548, ¶72. In practice, courts make the second finding before embarking on the best interest analysis. *Id.*

{¶53} The juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to a children services agency only if it finds, by clear and convincing evidence, that both prongs of the above test are met. *In re Krems*, 11th Dist. Geauga No. 2003-G-2535, 2004-Ohio-2449, ¶36. "Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Id.*, citing *In re Holcomb*, 18 Ohio St.3d 361, 368 (1985).

{¶54} "A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence." *In re D.M.*, 4th Dist. Hocking No. 15CA22, 2016-Ohio-1450, ¶10 (citations omitted); *see also In re S. Children*, 5th Dist. Stark No. 2012-CA-00164, 2012-Ohio-6265, ¶24, citing

14

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179 & *State v. Thompkins*, 78 Ohio St.3d 380 (1997). In applying this standard, the appellate court ""weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."" *Eastley*, *supra*, at ¶20; quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001); quoting *Thompkins*, *supra*, at 387; quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶55} "'Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact.'" *In re D.H.*, 11th Dist. Ashtabula No. 2017-A-0081, 2018-Ohio-630, ¶18, quoting *In re West*, 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶37.

{¶56} Appellant argues the trial court's finding that N.M.P. was in agency custody for 12 months of a consecutive 22 month period under R.C. 2151.414(B)(1)(d) was against the manifest weight of the evidence. Appellant does not take issue with the trial court's findings regarding N.M.P.'s best interest.

{¶57} For purposes of computing 12 months of a consecutive 22 month period, a child is considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated or the date that is 60 days after the removal of the child from the home. R.C. 2151.414(B)(1).

{¶58} We do not conclude the trial court's finding under R.C. 2151.414(B)(1)(d) indicates the trier of fact clearly lost its way. In 2015 JCC 183, N.M.P. was placed in the interim predispositional custody of PCDJFS on March 12, 2015. The journal entry from the adjudicatory hearing was filed on April 24, 2015. Temporary custody was granted to

PCDJFS on May 28, 2015. N.M.P. remained in the temporary custody of PCDJFS until March 14, 2017, when he was ordered returned to appellant. In 2017 JCC 489, on May 24, 2017, N.M.P. was again placed in the interim predispositional custody of the agency. He was adjudicated dependent on June 22, 2017, and temporary custody was granted to the agency on August 30, 2017. Inclusive of 2015 JCC 183, N.M.P. was in temporary agency custody for 12 or more months out of the 22 consecutive months preceding the filing of the motion for permanent custody. Accordingly, the trial court's finding under R.C. 2151.414(B)(1)(d) was not against the manifest weight of the evidence.

{¶59} Appellant argues that even considering 2015 JCC 183, the trial court's finding that PCDJFS met the requirements of R.C. 2151.414(B)(1)(d) is against the manifest weight of the evidence because N.M.P. was returned to the custody of appellant between cases. However, "[t]he statute requires only that the child must have been in the custody of a public agency for twelve or more months of a consecutive twenty-two month period. This might include a situation where a child had been in temporary custody for six months on one occasion, was briefly out of agency custody, and then returned to temporary custody for another six months—all within a consecutive twenty-two month period." *In re T.B.*, 9th Dist. Summit No. 21124, 2002-Ohio-5036, ¶23. Appellant's argument is not well taken.

{¶60} Appellant's sixth assignment of error is without merit.

{¶61} Appellant's fourth assignment of error states:

{¶62} "The trial court committed reversible error when it granted permanent custody upon grounds that were not brought to the attention of the parents in a timely fashion."

16

{¶63} Appellant first takes issue with the trial court's finding that "[p]ursuant to R.C. 2151.414(B) N.M.P. has been abandoned by his parents." Appellant argues there is no specific ground for granting permanent custody under R.C. 2151.414(B). However, it is clear the trial court was making a finding under R.C. 2151.414(B)(1)(b), which provides that an agency may establish the second prong of the permanent custody test if "[t]he child is abandoned." This finding was supported by the record.

{¶64} Appellant next argues that granting permanent custody pursuant to R.C. 2151.414(B)(1)(b) violated her due process rights because that ground was not asserted in PCDJFS's motion for permanent custody. However, the motion for permanent custody clearly states that "[p]ursuant to R.C. 2151.011(C) N.M.P. has been abandoned by his parents." Although the motion does not specifically cite to R.C. 2151.414(B)(1)(b), appellant had sufficient notice that abandonment was one of the grounds being pursued by PCDJFS.

{¶65} Appellant further argues that the trial court's finding under R.C. 2151.414(B)(1)(a) that N.M.P. "cannot nor should not [sic] be placed with his parents within a reasonable amount of time" violated her due process rights because PCDJFS did not assert this ground in its motion for permanent custody. "R.C. 2151.414(B) requires a trial court to find the existence of only one of the R.C. 2151.414(B) factors." *In re S.M.*, 4th Dist. Highland No. 14CA4, 2014-Ohio-2961, ¶28 (citation omitted). Because we have determined the trial court's findings under R.C. 2151.414(B)(1)(b) and (d), which were included in the motion, were supported by the record, any error associated with the trial court's other findings under R.C. 2151.414(B)(1) is not reversible error. Appellant's argument is not well taken.

{¶66} Appellant's fourth assignment of error is without merit.

{¶67} Often these cases present difficult choices regarding termination of the parental rights of a parent who has made attempts at being a parent. This is not one of those cases. Appellant was afforded many opportunities for assistance with her parenting but declined virtually all of them and did not even appear at the hearing to state her intentions.

{¶68} The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.

THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.