[Cite as *In re G.C.M.G.*, 2023-Ohio-3018.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

IN THE MATTER OF:

G.C.M.G. AND J.A.G.,
DEPENDENT CHILDREN

CASE NOS. 2023-P-0024
2023-P-0025

Civil Appeals from the
Court of Common Pleas,
Juvenile Division

Trial Court Nos. 2022 JCF 00607
2022 JCF 00608

# O P I N I O N

Decided: August 25, 2023
Judgment: Reversed

*Katherine E. Rudzik*, 26 Market Street, Suite 904, Youngstown, OH 44503 (For Appellant, Heather Duche).

*Victor V. Vigluicci*, Portage County Prosecutor, and *Julia B. Adkins*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee, Portage County Department of Job and Family Services).

*Karlek D.D. Jarvis*, 206 South Meridian Street, Suite A, Ravenna, OH 44266 (Guardian Ad Litem).

*Thomas Grist*, 228 West Main Street, Ravenna, OH 44266 (For G.C.M.G., Minor).

MATT LYNCH, J.

{¶1} Appellant, Heather Duche, appeals from the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting permanent custody of her children, G.C.M.G. and J.A.G., to appellee, the Portage County Department of Job and Family Services (PCDJFS). For the following reasons, we reverse the decision of the

lower court.

{¶2} Duche is the biological mother of G.C.M.G., born July 27, 2011, and J.A.G., born July 13, 2012. The children's biological father is Garrett Greenstreet, who has not appealed from the lower court's termination of his parental rights.

{¶3} On November 30, 2020, complaints were filed alleging the children were abused, neglected, and dependent. They alleged that the children had been left in the care of an individual by Duche while she had a medical procedure and she did not return to pick up the children. Following a shelter care hearing, the children were placed in the interim custody of PCDJFS. The children were adjudicated dependent pursuant to a stipulation. The dependency finding was based on a "need for services to address parenting issues and abandonment issues." A dispositional hearing was held on February 9, 2021, and the children were placed in the temporary custody of PCDJFS. A springing order issued at that time provided that the children would be returned to Duche's legal custody, with protective supervision, in 30 days. On February 25, 2021, PCDJFS filed objections to the springing order as Duche had tested positive for methamphetamine and had violated a no contact order by having her boyfriend at her residence while the children were present.

{¶4} After multiple extensions of the temporary custody order, PCDJFS filed a Motion for Permanent Custody on November 10, 2022. It requested termination of parental rights since the father was incarcerated and Duche "has failed to adequately address her mental health, housing, and employment issues," was presently homeless, had tested positive for illicit substances, and had not completed her case plan objectives.

{¶5} A hearing on the motion for permanent custody was held on April 14, 2023.

2

It was conducted jointly with a hearing on a separate legal custody case involving Duche's two other children. The following testimony was presented:

{¶6} Danielle Stropki, a PCDJFS caseworker, became involved with the family in November 2020. At that time, the children were removed from Duche's custody when a friend watching them for a weekend could no longer care for them and police could not locate Duche. The case plan required that Duche complete drug and alcohol and mental health assessments, participate in counseling services, comply with requests for drug screens, complete a parenting program, obtain an income, and maintain safe and stable housing. She was also to address any issues arising from prior endangering children charges in Summit County.

{¶7} After the dependency adjudication, the springing order was put in place and the children returned home on an extended visit. Shortly thereafter, in February 2021, PCDJFS filed a notice of objection given Duche's positive drug test and violation of an order that the children not have contact with her boyfriend. The children remained in the temporary custody of PCDJFS. In May 2021, Duche twice tested positive for methamphetamine. At the time of the case plan review in November 2021, Duche was in mental health counseling and had another positive drug screen. Stropki testified that Duche had completed both her drug and alcohol and mental health assessments.

{¶8} Kellan Towns, a PCDJFS caseworker, was assigned to the case from November 2021 until June 2022. According to Towns, she conducted "random" drug screens of Duche when she saw her for appointments. Towns testified that these were conducted about once a month "due to the fact that she was [also] doing screening with Compass Recovery" and Towns was "getting those reports." Duche did not complete

3

many of the requested screens from Compass in March through May 2022. Towns confirmed that Duche tested positive for methamphetamine three times in 2021, but Duche denied usage and asserted that she tested positive because others in her apartment building were using methamphetamine. Duche did not comply with requests to confirm the results with a hair follicle test. Duche also refused three oral drug screen requests in 2021. Towns was asked if "at any point in time" did Duche begin screening negatively, to which Towns stated: "She did. There were frequent negatives." Towns testified that the last positive test by Duche in this case was March 30, 2022. Towns testified that, there had initially been times Duche did not come in for drug screens, so Towns began asking for verification for her unavailability (the date of this request is not clear from her testimony). After that request, apart from the hair follicle test, Duche provided doctor's notes or other documented justifications for not being able to timely complete drug tests. According to Towns, Duche did not refuse any tests requested by PCDJFS in 2022.

{¶9} According to Towns, Duche participated in counseling at both Compass Recovery and Coleman Health Services. She eventually began undergoing all counseling services at Compass for mental health and substance abuse. Towns discussed that Duche had been at risk of being discharged from these services for failing to attend some sessions. Towns testified that beginning in January 2022, meetings with Duche became difficult and she was non-compliant.

{¶10} Duche was consistent with her supervised visitation with the children. She also attended several extracurricular activities for her children, such as baseball games and a basketball game. During this time, J.A.G. was doing well in school but had tantrums

4

after visitation on Tuesdays. Katie Miley, program manager at Place of Peace, had been supervising Duche's visits for about two years. Duche was always on time and came to all visitations. When staff asked Duche "not to say certain things to the children * * * in respect to coming home and time lines on that," Duche complied with these requests.

{¶11} Rachell Magrell, a PCDJFS on-going caseworker, began working with the family in July 2022. Although Duche was supposed to meet with Magrell monthly, Magrell met with Duche in July, September, and October but did not see her in August 2022 or November through January 2023. Magrell testified that she had difficulty getting responses to communications with Duche. Duche indicated she had difficulty scheduling meetings due to her work commitments.

{¶12} As to Duche's progress on the case plan, Magrell testified that Duche had worked as a manager at Family Dollar since April 2022. Magrell believed she could care for the children with the income made at this job. Duche had been in multiple apartments during the pendency of this matter and Magrell had difficulty arranging visits to those apartments. However, Duche obtained housing in February 2023, which Magrell visited. Magrell described the residence as appropriate: "It's a large, three bedroom house with a fenced in backyard. The floors are good. The rooms are good. She has beds for the children."

{¶13} Magrell explained that Duche tested clean for drugs in July 2022 and her tests were negative for over a year. Duche submitted to all random and/or requested drug screens from the time Magrell took over the case in June, and tested negative as recently as February 2023, although screens were not completed in the months they did not meet. Magrell explained that Duche had been receiving treatment from both Coleman

5

and Compass and, in August 2022, she decided to receive services from Compass only, attending appointments weekly. During that time, Duche was being screened for drug use by Compass and all tests were negative. Duche stopped going to Compass in November 2022, saying that she worked too much. According to Magrell, Duche did not complete a parenting program as required by her case plan.

{¶14} Magrell characterized the relationship between G.C.M.G. and Duche as a "love-hate" relationship "because of the things she has put him through" but he loves her. He "bounces back and forth from, I'd rather be adopted than go home to I want to be with my Mom, which is where he's at right now." J.A.G. is nonverbal but has a bond with Duche. Both children are bonded with each other and their other siblings. J.A.G. has had multiple placements but was in a foster home at the time of the hearing. G.C.M.G. had three or four placements and was in a group home at the time of the hearing.

{¶15} Bradford Price, a counselor at Compass Recovery, worked with Duche from December 2021 to November 30, 2022, and believed she made positive progress through her treatment. While she initially had some urine drug screens that tested positive for THC, her last 21 drug screens were negative for all mood-altering chemicals. She engaged well in her treatment and reviewed strategies to modify her behavior and make positive decisions, which led to her choice to live in a home in a better neighborhood. She stopped engaging in services because she indicated that she made significant progress.

{¶16} Duche testified that she is a full-time assistant manager at Dollar General and receives pay she believes is adequate to support her children. She is up to date with her rent in her current residence and has a month-to-month lease. She testified that she

6

sometimes had difficulty meeting with Magrell due to Magrell's limited availability and Duche's work schedule. She also made a decision to stop going to Compass because the appointment times conflicted with her work schedule. She spoke with Magrell about reengaging with Compass in February 2023 and Magrell indicated: "it wouldn't really matter what I did at this point if I reengaged or not."

{¶17} Duche testified that she previously used methamphetamine but stopped in October 2019 and her last positive drug screen was in March 2022. She described that the child endangering charges were due to a past boyfriend's abuse of the children and she is in good standing on non-reporting probation.

{¶18} Duche testified that she consistently visited the children and indicated that the children do not want to leave at the end of visitation. She loves her children and believes she can care for them best because she knows them. She expressed concerns that she had not been informed about her children's medical concerns and visits with her children were sometimes cancelled by PCDJFS. Duche testified that she had completed a parenting program prior to PCDJFS' involvement with the family and provided proof to Stropki, who said it would be sufficient to satisfy the requirement for a parenting class.

{¶19} The guardian ad litem, Karlek Jarvis, recommended that permanent custody be granted to PCDJFS. When Jarvis met with G.C.M.G. in November 2022, he did not want to return to his mother. However, in February 2023, G.C.M.G. stated that he wanted to return to his mother's home. J.A.G. is clearly bonded with his mom and is unable to fully express his wishes. Jarvis had concerns with Duche's inconsistency, failure to complete counseling, and her past relationships.

{¶20} On April 24, 2023, the trial court issued a Journal Entry granting permanent

7

custody of the children to PCDJFS. The court found that the children had been in the custody of children's services for 22 of the prior 22 months. It found it was in the children's best interest that Duche's parental rights be permanently terminated. It found that reunification was unlikely since Duche had failed to consistently engage with PCDJFS, recently obtained housing, had not completed a parenting program, had not consistently provided random drug screens, and stopped services after November 2022.

{¶21} Duche timely appeals and raises the following assignment of error:

{¶22} "The Trial court's decision to terminate the parental rights of Appellant as to the Children in this appeal was against the manifest weight of the evidence."

{¶23} "It is well established that a parent's right to raise a child is an essential and basic civil right." (Citation omitted.) *In re T.B.,* 11th Dist. Lake No. 2008-L-055, 2008-Ohio-4415, ¶ 29; *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). Termination of parental rights has been described as "the family law equivalent of the death penalty." (Citations omitted.) *State v. Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. However, "[t]he rights of a parent to his or her child, while fundamental, 'are always subject to the ultimate welfare of the child.'" (Citation omitted.) *In re L.M.R.*, 11th Dist. Lake No. 2016-L-096, 2017-Ohio-158, ¶ 33, citing *In re Cunningham,* 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979). "[T]he termination of the rights of a natural parent should occur as a last resort" but is authorized "when necessary for the welfare of the child." *Id.*

{¶24} "R.C. 2151.414(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody." *In re Krems*, 11th Dist. Geauga No. 2003-G-2535, 2004-Ohio-2449, ¶ 33. The court must find: (1) that one of

8

the circumstances set forth in R.C. 2151.414(B)(1)(a) through (e) is present and (2) that it is in the best interest of the child to grant permanent custody to the agency moving for custody. R.C. 2151.414(B)(1).

{¶25} The lower court found that, pursuant to R.C. 2151.414(B)(1)(d), the children had been in the custody of PCDJFS for 22 months of a consecutive 22 month period, since February 18, 2021, thereby satisfying the first prong. Duche does not dispute this finding.

{¶26} As to the second prong, Duche contends that the best interest finding made by the trial court was not supported by the weight of the evidence. She argues that her substantial compliance with the case plan indicated it would be in the best interest of the children to return to her custody.

{¶27} A determination that it is in the best interest of the children to grant permanent custody to the children's services agency must be supported "by clear and convincing evidence." R.C. 2151.414(B)(1); *In re J.S.E.*, 11th Dist. Portage Nos. 2009-P-0091 and 2009-P-0094, 2010-Ohio-2412, ¶ 25. In applying a clear and convincing evidence standard, the evidence must "'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Citation omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). The reviewing court examines the record to determine whether the evidence satisfies this burden of proof. *Id.*

{¶28} Regarding Duche's contention that the court's judgment is not supported by the weight of the evidence, "'[a] reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the

9

evidence.'" (Citation omitted.) *In re N.M.P.*, 2018-Ohio-5072, 126 N.E.3d 200, ¶ 54 (11th Dist.); *In re J.L.S.*, 11th Dist. Portage Nos. 2020-P-0053 and 2020-P-0054, 2020-Ohio-5143, ¶ 26. The appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "'Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact.'" (Citations omitted.) *In re D.H.*, 11th Dist. Ashtabula No. 2017-A-0081, 2018-Ohio-630, ¶ 18. "A trial court's judgment terminating parental rights and awarding permanent custody to an agency will not be reversed as against the manifest weight of the evidence if it is supported by clear and convincing evidence." *In re Belanger*, 11th Dist. Ashtabula No. 2002-A-0047, 2002-Ohio-4956, ¶ 17.

{¶29} We recognize that there is a case currently pending before the Ohio Supreme Court to resolve a conflict on the issue of the applicable standard of review in termination of parental rights proceedings. *In re Z.C.*, 169 Ohio St.3d 1439, 203 N.E.3d 730, 2023-Ohio-482 (finding that a conflict exists on the following issue: "[w]hen reviewing a trial court's decision to terminate parental rights, is the appellate standard of review abuse of discretion, manifest weight of the evidence, clear and convincing evidence, or sufficiency of the evidence?"). Nonetheless, there is no question that the applicable statute mandates that a court may grant permanent custody only if it determines "by clear and convincing evidence" that such decision is in the best interest of the children and satisfies the other factors set forth in R.C. 2151.414(B)(1). If a trial court terminates

10

parental rights in the absence of such evidence, it logically follows that this would not be a proper exercise of its discretion. *See In re L.H.*, 2021-Ohio-3521, 179 N.E.3d 214, ¶ 9 (2d Dist.) ("[a] permanent-custody determination is unreasonable, and may be reversed as an abuse of discretion, if the record lacks clear and convincing evidence" to support the statutory elements for termination of parental rights). Similarly, as noted above, a decision supported by clear and convincing evidence is likewise supported by the weight of the evidence. *Belanger* at ¶ 17. In the present matter, the absence of clear and convincing evidence means the lower court could not exercise its discretion to terminate parental rights nor does the evidence weigh in favor of such termination.

**{¶30}** Duche argues that the decision to terminate her parental rights was against the evidence because she did what was asked of her, even if it was not exactly in the manner requested by PCDJFS. She emphasizes that, at the time of the final hearing, she was employed, had an appropriate home, and was drug free.

**{¶31}** As part of her argument, Duche points to the "substantial" progress she made on her case plan. It has been held that compliance with a case plan does not preclude termination of parental rights. *In re of A.M.*, 11th Dist. Ashtabula Nos. 2022-A-0090 and 2022-A-0091, 2023-Ohio-671, ¶ 47. This is not to say, however, that progress on a case plan is irrelevant, since compliance with the case plan can impact the children's best interests. *In re C.E.*, 4th Dist. Athens No. 19CA10, 2019-Ohio-4125, ¶ 46 ("[a] parent's case plan compliance may be relevant to the extent that it affects the child's best interest"). Duche's progress is a relevant consideration when it comes to the best interest factors and will be considered in relation to those factors.

**{¶32}** In evaluating the entirety of the evidence presented in conjunction with the

11

best interest factors, we find that there is a lack of evidence to meet the burden of clear and convincing evidence or that the court's termination of parental rights was supported by the weight of the evidence. There was not adequate evidence presented that Duche is unable to provide adequate care or support to her children or that it would be in their best interest to have their relationship with their mother terminated. *See In re A.J.*, 11th Dist. Trumbull No. 2010-T-0041, 2010-Ohio-4553, ¶ 66, citing *In re Fry,* 3d Dist. Marion Nos. 9-02-14, et al., 2002-Ohio-3935, ¶ 8 ("the permanent removal of a child may be condoned only where there is demonstrated an incapacity on the part of the parent to provide adequate parental care," not where an adoptive family could provide better care).

{¶33} In determining the best interests of the children, a court shall consider "all relevant factors, including, but not limited to": the interaction and relationship of the child with his parents, siblings, relatives, and foster caregivers; the wishes of the child with regard for his maturity; the custodial history of the child; the child's "need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency"; prior convictions for child endangering; and whether the parent has placed the child at substantial risk of harm due to alcohol or drug abuse. R.C. 2151.414(D)(1)(a)-(e) and (E)(7)-(11).

{¶34} Here, there are a multitude of factors in favor of a finding that termination was not in the children's best interests. R.C. 2151.414(D)(1)(a), relating to the child's relationship with family members and caregivers, is "highly significant" as it "focuses on a critical component of the permanent custody test: whether there is a family relationship that should be preserved." *In re C.M.*, 9th Dist. Summit No. 21372, 2003-Ohio-5040, ¶ 11. Both children were bonded with their mother and had appropriate interactions with

Case Nos. 2023-P-0024 and 2023-P-0025

her at visitations, which Duche attended without fail. At the time of the permanent custody hearing, the testimony clearly demonstrated that G.C.M.G. wanted to return home to his mother. It is further evident he had difficulty settling in with any foster family placement. Although J.A.G. is non-verbal, testimony indicated that he was bonded to Duche as well as G.C.M.G. Because both children were in multiple placements, and G.C.M.G. was in a group home at the time of trial, their bond to foster parents is not a significant factor to weigh.

{¶35} Further, both children had lived with their mother and each other for the vast majority of their lives. "A trial court should consider the 'foreseeable impact on [a child's] emotional and social well-being' before removing a child from a parent if the child has a profound connection with that parent." (Citation omitted.) *A.J.* at ¶ 71. Removing G.C.M.G. from his mother's custody permanently, considering his current expressed desire to live with her and the fact that he has spent most of his life with her, would likely have a negative impact upon him, although this was not adequately addressed at the hearing. *Id.*; *see In re A.W.,* 9th Dist. Lorain No. 09CA009631, 2010-Ohio-817, ¶ 18 ("Significantly lacking in [Children Services'] evidence pertaining to [the child's] relationship with Mother was any evidence to explain how terminating this relationship would impact [him]. * * * Evidence of [the child's] likely emotional reaction to the termination was another critical piece of information that should have been considered by the trial court in its best interest determination."). The undisputed testimony of two witnesses demonstrated G.C.M.G.'s conflicting wishes and his most recently expressed desire to live with his mother. Given the record before this court, it cannot be said that there was clear and convincing evidence presented to support a finding either that

13

G.C.M.G. presently desired to be removed from his mother's custody or that permanent termination of her parental rights would not have a negative impact on him.

{¶36} As to the need for a legally secure placement, the evidence supports a determination that Duche can provide this to her children. In response to the removal of her children, she achieved and has held for over a year a full-time job as an assistant manager. Although she did struggle with housing, at the time of the hearing she had a house described as suitable for the children by a PCDJFS caseworker. There was nothing to indicate she would not remain in that home given her testimony that she had a lease and was up to date with payments, without any evidence to the contrary. Previous concerns about drug use were addressed, as the testimony indicated that Duche had not had a positive drug test for a year. Her past 21 drug screens at Compass were negative, which establishes a consistent lack of drug use (and reveals that, despite arguments regarding her lack of cooperation, she submitted to a substantial number of tests). While the dissenting opinion places great emphasis on Duche's past positive drug tests in 2021, there is no dispute that she had not tested positive for one year. If we are to find that past drug use which has been discontinued is a significant factor in applying the family law equivalent of the death penalty, it raises serious questions about the entire system for reunifying children with their parents. What is the incentive or purpose for a parent to address those concerns in the case plan if their prior bad choices will be held against them although they have taken steps to rectify these issues?

{¶37} Further, although there had been a past conviction for child endangering due to the conduct of a prior boyfriend, Duche remained in compliance with probation and there is nothing in the record to indicate she is currently in a relationship which would

14

endanger her children.

{¶38} While much emphasis was placed on Duche's failure to continue with counseling, it is unclear how this would impact her ability to provide a legally secure placement. Her counselor provided testimony that she had made concrete steps and progress in counseling which led to better choices and that she also had consistently screened negative for drug use. PCDJFS failed to adequately demonstrate the need to indefinitely continue counseling in order for Duche to successfully parent her children. The record lacks clear and convincing evidence that adequately demonstrates the reason for indefinite mental health counseling. As noted above, permanent custody proceedings are not a test of compliance with the case plan but a determination of the children's best interests. Failure to continue with counseling, when it is not proven necessary to further the best interests of the children, is of little consequence.

{¶39} In its brief, PCDJFS emphasizes its belief that Duche failed to substantially comply with her case plan. In support of its argument, PCDJFS argues that it took her a significant amount of time to achieve housing, that she did not have verifiable employment until April 2022, and that she had previously had positive drug screens. We emphasize, however, the progress that Duche made on these objectives as addressed above. "Although the court may consider a parent's history with the child in determining the child's best interest, the court should also consider whether the parent has improved and made changes to benefit the child. If the parent has made great strides and improvements, her past activity is not conclusive as to whether the parent is currently fit to retain permanent custody of her child." *A.J.*, 2010-Ohio-4553, at ¶ 73. Duche has made significant progress by obtaining full-time employment and stable housing, as well as in addressing

15

drug use. Although she may have made some errors in the past, the purpose of PCDJFS creating a case plan is to assist parents in taking better care of their children.

{¶40} We recognize PCDJFS' argument that Duche failed to continue counseling and had difficulty maintaining constant contact with PCDJFS. It is reasonable that Duche's efforts to obtain full-time employment and housing, as well as attending all visits with her children, sometimes led to difficulty in maintaining a consistent schedule of meetings with caseworkers and counselors. Duche has been under a case plan for over two years and an indefinite requirement to continue counseling has not been proven necessary to successfully parent her children, particularly where she has made significant progress. Where there are alleged deficiencies by a parent, it has been found that these do not warrant termination of parental rights where they do not "impact [a parent's] current ability to care for [his child]" or "have a negative impact upon [the child's] best interests." *In re J.F.*, 11th Dist. Trumbull No. 2011-T-0078, 2011-Ohio-6695, ¶ 72.

{¶41} As to the question of whether Duche completed a parenting class, we observe that Duche testified she had completed one prior to removal of the children and that caseworker Stropki told her this satisfied the case plan goal. Stropki did not provide testimony as to whether this occurred. While the dissent asserts that the parenting class was incomplete, the testimony in support of this conclusion lacks clarity. The testimony of the most recent case worker, who took over the case after Duche had already been working the case plan, does not demonstrate awareness of discussions Duche and Stropki may have had on this issue. This prevents a conclusion that this issue was demonstrated by clear and convincing evidence since other caseworkers could not attest to what Stropki told Duche on this issue.

16

Case Nos. 2023-P-0024 and 2023-P-0025

{¶42} Finally, PCDJFS argues that Duche did not remedy those concerns leading to the removal of the children from her custody. Removal initially occurred when a friend watching the children could no longer do so and where there was difficulty getting in contact with Duche to return the children. There is nothing to indicate this behavior would be repeated. Further, the springing order was revoked due to Duche's abusive boyfriend and positive drug test. As addressed thoroughly above, there is nothing in the record showing that either of these is presently a concern. The record does not indicate she is presently in an abusive relationship and she has not tested positive for drugs for over a year. Duche must be credited for the changes she has made which remedied those concerns leading to removal of the children, particularly where the facts indicate she can presently provide a safe environment for the children. *See A.J.*, 2010-Ohio-4553, at ¶ 74 ("remedying conditions which led to the removal of children from their parents' home supports a conclusion allowing the parents to retain permanent custody of their children").

{¶43} The dissenting opinion emphasizes that the weight of the evidence supports the trial court's decision and that the trial court is in the best position to evaluate credibility and adjudicate conflicts. While the trial court is certainly entitled to deference on matters such as credibility, the issue here is not which witness is to be believed but instead simply that the evidence presented does not rise to the standard of clear and convincing. The deference to be afforded is in resolving conflicts in evidence but we cannot defer to the court if the evidence does not rise to the statutorily mandated standard.

{¶44} It cannot be overemphasized that, although the dissent points to Duche's failure to comply with certain parts of the case plan during the period the children have been removed, this does not dictate the termination of parental rights. Termination is

17

only appropriate if it is in the children's best interest. This involves far more than considering whether the parent technically complied with the entirety of the case plan. It involves consideration of Duche's current ability to provide a home to the children, the wishes and bonds of the children, and their custodial history. Permanently removing the children from the custody of the mother with whom they have lived the majority of their lives when she has made significant progress to provide them a safe home and has terminated drug use for over a year, and instead requiring them to remain in placements which have fluctuated multiple times throughout PCDJFS' custody, is not in their best interests.

{¶45} Duche also argues that insufficient efforts were made at reunifying her with her children. We need not reach this issue since we hold that there was a lack of clear and convincing evidence to support a finding that termination of parental rights was in the children's best interest. As such, we must reverse the trial court's finding that Duche's parental rights be terminated as to G.C.M.G. and J.A.G.

{¶46} The sole assignment of error is with merit.

{¶47} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting permanent custody of G.C.M.G. and J.A.G. to PCDJFS, is reversed. Costs to be taxed against appellee.


JOHN J. EKLUND, P.J., concurs,

EUGENE A. LUCCI, J., dissents with a Dissenting Opinion.


_____

18

Case Nos. 2023-P-0024 and 2023-P-0025

EUGENE A. LUCCI, J., dissents with a Dissenting Opinion.

{¶48} We are not performing a de novo review of the evidence adduced in the lower court. The majority is weighing for itself the effect of each piece of evidence and merely second-guessing the trial court, rather than determining whether the trial court's judgment was not supported by some competent, credible evidence of each of the essential elements of the case, clearly lost its way, and created a manifest miscarriage of justice.

{¶49} The children were removed from their mother on November 28, 2020 based upon a stipulated finding of dependency due to a need for services to address parenting issues and abandonment issues on the part of their mother, and the children were placed in the temporary custody of the Portage County Job and Family Services ("PCJFS").

{¶50} Thereafter, a case plan was ordered to address appellant's needs. Appellant violated a "springing order," on or about February 18, 2021, by testing positive for illegal drugs and allowing a violation of a no-contact order, and the springing order was vacated. The temporary custody of the children with PCJFS was extended twice, each for six months, on November 29, 2021 and again on May 25, 2022. PCJFS was granted permanent custody after a trial on April 14, 2023.

{¶51} Appellant's case plan (one originally with Summit County Children Services) included mental health, parenting classes, and finalizing child endangerment charges in Summit County; the charges were finalized in mid-2020. Shortly thereafter, the children were removed by PCJFS, with appellant stipulating that she had abandoned the children. Her case plan for reunification included random drug screens; a failure to submit was deemed positive for illegal substances. She was to complete a chemical dependency

19

Case Nos. 2023-P-0024 and 2023-P-0025

assessment and follow any recommendations. She was to have a case manager and follow a plan, maintain safe and stable housing, maintain income sufficient to support her family, and complete a parenting program.

{¶52} Appellant tested positive for illegal substances on February 18, 2021, but failed to follow through with completion of her treatment programs. She was given another treatment provider and failed to follow through with that program. She had multiple positive drug screens for methamphetamine, amphetamine, and cocaine throughout the second half of 2021. She denied a substance abuse problem and refused to submit hair follicles for testing, and yet maintained her denial. She was discharged for noncompliance from two programs that were intended to address her substance abuse and mental health. She missed monthly meetings with her case manager. When appellant said she would complete treatment in August 2022, she stopped in November 2022, blaming "crazy hours" at work.

{¶53} Appellant first obtained appropriate housing only in February 2023, but stopped completing all other case-plan services other than employment. Based upon appellant's failure to successfully complete her case plan requirements, PCJFS filed for permanent custody on November 10, 2022. The children have been in the custody of PCJFS for 12 or more months out of a consecutive 24-month period.

{¶54} The trial court found, by clear and convincing evidence, that appellant has (1) refused to complete her case plan, (2) not completed mental health treatment, (3) failed to consistently engage with PCJFS, (4) only recently has obtained housing, (4) not consistently provided random screens, and (5) not completed a parenting program, despite reasonable efforts by PCJFS to prevent the continued removal of the children

20

from the appellant. With those findings, the trial court placed the children in the permanent custody of PCJFS.

{¶55} We use the criminal standard for manifest weight of the evidence in our review of the trial court's decision. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-328, 972 N.E.2d 517, ¶ 17, applying *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In doing so, we must give great deference to the trier of fact. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶56} Permanent custody cases are extremely fact intensive. The appellate briefs of the parties, not surprisingly, focus and highlight the facts that support each party's respective position. The trial court is in the best position to evaluate the credibility of the evidence and adjudicate any conflicts. *Forcier v. Forcier*, 11th Dist. Geauga No. 2019-G-0192, 2019-Ohio-5052, ¶ 55. As such, it is within the sound discretion of the trial court to assess the credibility of testimony and other evidence. Any judgment regarding the persuasiveness of evidence is for the trial court, not the appellate court. We must therefore look to see if the trial judge lost her way such that she could not have a firm belief or conviction of the evidence as she evaluated it. To say, as the majority asserts, that an appellate court reviews the trial court's judgment under a clear-and-convincing standard is, in effect, asserting this court reviews the trial court's judgment de novo and without deference to the trial court's credibility determinations. We do not, however, retry the case on appeal. We are reviewing to determine whether we are satisfied that the trial

21

Case Nos. 2023-P-0024 and 2023-P-0025

court could make, by clear and convincing evidence, the conclusion that was rendered. I maintain this standard was satisfied.

{¶57} Significantly, the issue of an appellate court's standard of review in permanent custody cases is currently before the Supreme Court of Ohio on a conflict certified by this court. *See In re Z.C.*, 2022-Ohio-3199, 195 N.E.3d 590 (11th Dist.), certification granted *In re Z.C.*, 169 Ohio St.3d 1439, 203 N.E.3d 730, 2023-Ohio-482. In *Z.C.*, the Court certified the following question: "When reviewing a trial court's decision to terminate parental rights, is the appellate standard of review abuse of discretion, manifest weight of the evidence, clear and convincing evidence, or sufficiency of the evidence?" We await a conclusive resolution of this question. In light of the foregoing analysis, however, it is my position that, in order to afford the trial court due deference in credibility calls in relation to a trial court's best-interest analysis, it makes the most sense to follow the manifest-weight-of-the-evidence standard.

{¶58} We cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice. The credibility and weight of each witness's testimony lies primarily with the trier of fact. The evidence in his case does not weigh heavily against the judgment of the trial court. I respectfully dissent and would affirm.

Case Nos. 2023-P-0024 and 2023-P-0025